IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JENNY M. LEWIS, an individual,<br><br>               Plaintiff,<br>vs.<br><br>SALT LAKE COUNTY, a political subdivision of the State of Utah,<br><br>               Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [18] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:11-CV-01088 DN<br><br>District Judge David Nuffer |

Defendant Salt Lake County (the "County") filed its Motion and Memorandum of Law in Support of Motion for Summary Judgment (the "Motion")[1] on all the claims in Plaintiff Jenny Lewis's ("Lewis") complaint.[2] Lewis opposed the County's Motion in part.[3] After careful review of the pleadings, the parties' memoranda, and the relevant legal authorities, and for the reasons set forth in greater detail below, the County's Motion is GRANTED IN PART as to Lewis's equal protection and due process claims and DENIED IN PART as to Lewis's hostile work environment, retaliation, and breach of contract claims.

## BACKGROUND

Lewis was employed by the County as a part-time Victim's Advocate at the Salt Lake County Sheriff's Office for approximately four months in 2008. She was responsible for assisting abused children and victims of domestic violence, rape, and sexual assault. Lewis was often required to travel around the county to fulfill her employment responsibilities and was to be

---

[1] Motion and Memorandum of Law in Support of Motion for Summary Judgment ("Motion for Summary Judgment"), docket no. 31, filed May 8, 2013.

[2] Complaint, docket no. 2, filed November 29, 2011.

[3] Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opp. Memo."), docket no. 35, filed June 12, 2013.

reimbursed by the County for this travel. Lewis has alleged that in her brief employment with the County, she was subjected to a hostile work environment, and that after she complained about some of the events, she was fired in retaliation for engaging in protected activity. The County claims to have a valid reason for firing Lewis, but she claims the reason is pretextual.

*Hostile Work Environment Claims*

According to Lewis, shortly after she began working at the County, she became subjected to a hostile work environment. Lewis claims that she heard explicit details of her coworkers' and superiors' sexual relationships,[4] that one of her coworkers asked a male detective standing at attention whether anything else was standing at attention,[5] that at least one of her coworkers acted out sexual gestures,[6] that a coworker drew an offensive drawing on a whiteboard,[7] that coworkers and superiors made inappropriate sexual comments about another coworker who was trying on pageant dresses,[8] and that Lewis was invited to participate in a ménage a trois on a conference room table.[9] Lewis contends that these are just a few specific examples of the frequent and regular comments and behaviors that she was subjected to during her short four months of employment.

The County disputes that any of these incidents occurred and contends that only Lewis's self-serving testimony supports her claims.[10] But evidence corroborates at least some of Lewis's claims. For example, Lewis interpreted the offensive drawing as a pickle shaped like a penis, which the County disputes. Corroborating Lewis's testimony, Michelle Siller testified that Nubia

---

[4] Lewis Depo. at 77:13-84:1; 122:10-24, attached as Ex. 8 to Lewis's Opp. Memo., docket no. 36.

[5] *Id.* at 66:6-12.

[6] *Id.* at 86:11-89:8.

[7] *Id*. at 89:9-21.

[8] *Id.* at 103:16-104:14.

[9] *Id.* at 81:6-11.

[10] Reply to [Lewis's Opp. Memo.] at 1, docket no. 38, filed July 1, 2013.

Pena drew a large pickle shaped object on a whiteboard.[11] The context of the conversations leading up to this drawing and the interpretation of the drawing are issues for a jury to decide. A reasonable jury could find Lewis's version of events believable, especially since pickle drawing is not a frequent event in most offices. Also, other testimony provides some support for the context of the "standing at attention" comment,[12] though Lewis provides the only testimony that the comment was said. These are just two examples of alleged sexually explicit conduct that have some corroborating evidence from other witnesses. The truth of what happened can only be resolved in trial.

*Lewis's Alleged Complaints*

Lewis claims that she often objected to and complained about these allegedly frequent offensive comments and behaviors to her supervisor, Claudia McDonald. Lewis also claims that she never received sexual harassment training at the County, and that she repeatedly requested a copy of the County's policy on sexual harassment. The County argues that Lewis's objections were not actually complaints for purposes of Title VII and that the sexual harassment policy was available on the County's website.

Lewis also alleges that in September 2008, both Lewis and a co-worker left several voicemail messages with the Sheriff's Office's HR representative, Gaylen Larsen ("Larsen"), in an effort to complain about the hostile work environment. Lewis claims that Larsen never returned the phone calls. Lewis contends that she was finally able to speak with Larsen via telephone on the morning of October 6, 2008 to discuss her complaints about the hostile work environment. According to Lewis, Larsen advised Lewis that Larsen would speak to McDonald

---

[11] Siller Depo. at 55:24 – 56:10, attached as Ex. 6 to Lewis's Opp. Memo., docket no. 36.

[12] *Id*. at 44:6-21.

about Lewis's complaints.[13] Lewis also alleges that when she spoke with Larsen on October 10, 2008, Larsen indicated that she had spoken with McDonald about Lewis's complaints.[14]

The County, of course, disputes that the voicemails contained complaints, though Larsen acknowledges receiving at least one voicemail from Lewis in September 2008. The County also acknowledges that Lewis spoke to Larsen on the morning of October 6, 2008, but disputes that Larsen informed Lewis that an investigation would be commenced. Again, these factual disputes must be tried.

*Lewis's Mileage Reports*

When Lewis was first hired, she was informed by Captain James Potter that she was entitled to mileage reimbursement for her work-related travel.[15] Because Lewis claims that she was never trained on how to fill out the requisite mileage reports, Captain Potter told her to give them to a secretary, Jaime Ennis ("Ennis"), for review and feedback before submitting them for reimbursement.[16]

The County claims that Lewis submitted a mileage report seeking reimbursement for travel for which she was not entitled. But Lewis contends that she never actually submitted the mileage report, but instead only gave it to Ennis for review before submission. And Lewis believes that McDonald found the mileage report in Lewis's box, took it though it was not ready for submission, and used it to justify terminating Lewis. Again, corroborating testimony supports Lewis's claims.

Ennis testified that "it seem[ed] like Lewis had a question on how to fill [out the mileage

---

[13] Lewis Depo. at 124:7-25.

[14] Lewis Depo. at 126:3-9.

[15] Lewis Decl. at ¶¶ 22-23, attached as Ex. 1 to Lewis's Opp. Memo., [docket no. 36](docket no. 36).

[16] *Id.*

reports]."[17] Ennis further testified that she told Lewis that if Lewis had any questions about filling out the mileage reports, that Ennis would be happy to help her fill them out.[18] Ennis recalls that she received Lewis's mileage report in her mailbox, that it was filled out incorrectly, and that she attached a note to the mileage report indicating to Lewis that the report was filled out incorrectly and that Lewis needed to discuss it with her supervisor.[19] Ennis testified that she put Lewis's mileage report, along with Ennis's note, into an interoffice envelope with Lewis's name on it and placed the envelope into Lewis's mailbox.[20] Ennis testified that she later learned that "somehow, [Lewis's] supervisor had obtained [the interoffice envelope addressed to Lewis]" even though Ennis put Lewis's name on the envelope and put it in Lewis's mailbox.[21]

If a jury was to believe Lewis's version of events, and Ennis's testimony, McDonald's justification for terminating Lewis could be viewed as pretext.

*Lewis's Termination*

On the afternoon of October 6, 2008, after Lewis spoke with Larsen, Lewis was terminated. The stated basis for her termination was that she was not a team player; that she was difficult to manage and had a hard time taking instruction; that she missed a mandatory meeting; and because she submitted the improper mileage report for reimbursement.[22] And according to McDonald, Lewis's submission of the inaccurate mileage report was the "trigger" that led to her termination.[23] Although she was terminated on October 6, 2008, the County contends that the

---

[17] Ennis Depo. at 30:4-7, attached as Ex. 5 to Lewis's Opp. Memo., docket no. 36.

[18] *Id.* at 30:8-9.

[19] *Id*. at 30:12-15.

[20] *Id*. at 30:17-19.

[21] *Id*. at 30:22-23.

[22] Larsen Depo. at 21:15-20; McDonald Depo. at 58:12-25, 60:20-61:1, attached as Ex. 2 to Lewis's Opp. Memo., docket no. 36.

[23] McDonald Depo. at 82:3-20.

decision to terminate Lewis was made on October 3, 2008 by McDonald and Lt. Ownby.

Lewis claims that these reasons are manufactured pretext to justify her termination.[24] To support her claims, Lewis relies on several instances when she was praised by McDonald for doing a good job. For example, on August 7, 2008, McDonald wrote on Lewis's Facebook page that Lewis "did an amazing job."[25] On September 26, 2008, only 10 days before terminating Lewis, McDonald sent an email to Lewis and Pena in which she proclaimed:

> I want you to know how valuable you are and how much I appreciate you and the work you do! I get compliments about you both all the time. ☺ And I appreciate it. Thanks for all you do.[26]

These statements by McDonald in August and September 2008 are inconsistent with her post-termination statements about Lewis not being a team player and being difficult to manage. And a jury could certainly believe that the County's reasons for terminating Lewis were pretextual given these great reviews Lewis received from McDonald only a short time prior to her termination.

## Allegations and Motion

Lewis subsequently sued and alleged five causes of action against the County: (1) harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f) ("Title VII"); (2) retaliation in violation of Title VII; (3) violation of the equal protection clause of the U.S. Constitution; (4) violation of the due process clause of the U.S. Constitution; and (5)

---

[24] See *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) ("A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.") (citations and quotations omitted).

[25] Ex. B attached to Lewis Decl., docket no. 36.

[26] Ex. C attached to Lewis Decl., docket no. 36.

breach of contract.[27] The County has moved for summary judgment against Lewis on all of her claims. Lewis stipulated to entry of judgment against her on her equal protection and due process causes of action, but opposes summary judgment on the remainder of her claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29] A disputed fact is material only if it "might affect the outcome of the suit" in light of the substantive law.[30] The party opposing summary judgment bears the burden of presenting evidence that a disputed issue of material fact exists.[31] More specifically, the opposing party must present evidence sufficient to support every essential element of the claims on which it bears the burden of proof.[32]

In viewing the evidence "all justifiable inferences are to be drawn in [Lewis's] favor."[33] However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[34] To survive summary judgment there must be "significant probative evidence tending to support the complaint."[35]

---

[27] *Id.*

[28] Fed. R. Civ. P. 56(a).

[29] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

[30] *Id.*

[31] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

[32] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[33] *Anderson*, 477 U.S. 255.

[34] *Id.* at 242, 253.

[35] Id. at 249 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290 (1968).

**DISCUSSION**

The County moves for summary judgment on all of Lewis's claims. But the County overlooks or ignores several disputes of material fact which preclude summary judgment, some of which are set forth above. The County also fails to address Lewis's breach of contract claim, which arises from the County's failure to reimburse her for her mileage. For these reasons alone, the County's Motion for summary judgment on all claims is denied.

The County also misunderstands Lewis's retaliation claim. The County contends that because the decision to terminate Lewis was allegedly made by McDonald and Ownby on October 3, 2008, Lewis's termination could not have been made in response to her October 6, 2008 complaints to Larsen about the hostile work environment. This argument fails for multiple reasons. First, Lewis testified that she objected and complained to McDonald several times about the hostile work environment.[36] Lewis also contends that she requested a copy of the sexual harassment policy from McDonald on several occasions.[37] This is protected activity.[38] Lewis's claims are not solely dependent on whether she complained to Larsen prior to being terminated. Second, Lewis testified that both she and a co-worker left messages for Larsen to complain about the work environment in the months preceding her termination. "A causal connection is established [between protected activities and adverse employment action] where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[39] If a jury believes Lewis's allegations, Lewis has successfully established a retaliation claim.

---

[36] Lewis Depo. at 73:22-74:23; 106:18-24; 107:23-108:10; 111:16-23; 112:8-19; Lewis Decl. at ¶¶ 26, 28-29.
[37] *Id*.
[38] *See Miller v. Washington Workplace, Inc.*, 298 F. Supp. 2d 364, 377 (E.D. Va. 2004).
[39] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002).

**ORDER**

Based upon the foregoing,

IT IS HEREBY ORDERED that the County's Motion and Memorandum of Law in Support of Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that summary judgment is GRANTED against Lewis on her equal protection and due process claims set forth in the Third and Fourth Causes of Action of her complaint, respectively.

IT IS FURTHER ORDERED that summary judgment is DENIED on Lewis's remaining claims of hostile work environment, retaliation, and breach of contract.

Dated June 27, 2014.

BY THE COURT:

_____
David Nuffer
United States District Judge